### NELSON, MORRIS & CO. v. HILL.

(Circuit Court, W. D. Pennsylvania. September 16, 1898.)

#### No. 60.

ARREST—CIVIL PROCESS—ATTACHMENT FOR FAILURE TO PAY DECREE.

Under Pub. Laws Pa. 1842, p. 339, § 1, providing that no person shall be arrested or imprisoned on any civil process for any contract indebtedness, with certain exceptions, no attachment is authorized to enforce the payment of a decree rendered against defendant on an accounting under a contract by which he received and sold meats from plaintiff on commission, there being no finding of fraudulent conduct on his part.

Sur Rules for Attachment.

Weil & Thorp, for petitioners.

J. S. Ferguson, for defendant.

ACHESON, Circuit Judge. Section 990 of the Revised Statutes of the United States enacts that no person shall be imprisoned for debt in any state on process issuing from a court of the United States where by the laws of such state imprisonment for debt has been abolished, and that all modifications, conditions, and restrictions upon imprisonment for debt provided by the laws of any state shall be applicable to process issuing from the courts of the United States to be executed

therein.    The Pennsylvania act of July 12, 1842 (P. L. p. 339, § 1) provides:

"No person shall be arrested or imprisoned on any civil process issuing out of any court of this commonwealth, in any suit or proceeding instituted for the recovery of any money due upon any judgment or decree founded upon contract, or due upon any contract, express or implied, or for the recovery of any damages for the non-performance of any contract, excepting in proceeding, as for contempt, to enforce civil remedies, action for fines or penalties, or on promises to marry, on moneys collected by any public officer, or for any misconduct or neglect in office, or in any professional employment, in which cases the remedies shall remain as heretofore."

This act applies to decrees in equity equally with judgments at law, and prohibits arrest in every case upon contract which is not clearly within the exception. Pierce's Appeal, 103 Pa. St. 27, 29, 31. Where the act applies, an attachment cannot lawfully issue, for the party is not to be arrested, and put to his answer to the satisfaction of the judge or chancellor that he is unable to pay the decree, under pain of imprisonment. Id. The supreme court of Pennsylvania there said of this act: "Its object being to prevent oppression of debtors, in furtherance of that end it should be liberally construed." And, again: "Were it doubtful whether an attachment could be properly issued, the doubt should be solved against the writ." That case was a proceeding in equity against a liquidating partner for an account. The parties had been partners in trade, and on a dissolution of the firm there was an agreement that the defendant should settle the business, which he proceeded to do, but refused to account. There was a decree against him for a balance due the plaintiff. The court held that he was not liable to an attachment, the decree being founded on contract. In Scott's Case, 1 Grant, Cas. 237, Chief Justice Lewis declared that the power to imprison for the purpose of enforcing payment of money due on a contract no longer exists; that the words of the exception are not to be construed to embrace constructive contempts arising from the nonpayment of money due on a contract after the amount has been ascertained by a decree in equity; and that for a fraudulent disobedience of such a decree the act of assembly makes provision for investigating the facts, and prescribes a course of proceeding which excludes imprisonment until the fraud is established. The scope of the exception in the act of 1842 is indicated by the rulings in Chew's Appeal, 44 Pa. St. 247; Tome's Appeal, 50 Pa. St. 285; Church's Appeal, 103 Pa. St. 263; and Wilson v. Wilson, 142 Pa. St. 247, 21 Atl. 807,—in each of which cases the decree was founded upon the defendant's breach of duty as a trustee. Such cases, it was held, are excepted out of the operation of the act.

The bill here was for an accounting in respect to transactions of a complicated nature, extending from December 28, 1888, to October 1, 1891, arising under a series of written contracts between the plaintiffs and the defendant. These contracts (among other things) stipulated that the defendant should "handle, care for, and sell on commission" dressed meat and meat provisions shipped by the plaintiffs, who were dressed-meat dealers at Chicago, Ill., to the defendant, at Allegheny City, Pa.; that the defendant should "guaranty to secure equal average prices obtained by other Chicago dressed-beef dealers in Al-

legheny, Pa., or Pittsburg"; that the plaintiffs should draw upon the defendant "a sight draft for eighty per cent. of value of shipment of each car, and a sight draft for balance of sales of each car" as soon as made; and that the defendant should render an account of sales of each car load of meat immediately after the same was sold. The business was conducted under these contracts. Between the dates above mentioned the plaintiffs shipped to the defendant 737 car loads of meats, an average of about 5 cars per week; and for these several shipments the defendant rendered the plaintiffs 737 accounts of sales, which aggregated the large sum of $869,336.25. The master stated an account covering the whole of the transactions, and as a result found that there was a balance of $10,621.50 due by the defendant to the plaintiffs. The court confirmed this finding, and decreed that the defendant pay to the plaintiffs the said sum of money, with interest. Is any ground shown for awarding an attachment under the exception in the act of 1842? I think not. There was no technical trust here, and no breach of trust, within the meaning of the cited cases. No doubt the relation of principal and agent existed between these parties, and there is a balance due to the plaintiffs on account of sales of meats consigned by them to the defendant; but these facts do not warrant the arrest of the defendant. Reeside's Ex'r v. Reeside, 49 Pa. St. 322, 333. Under the contracts the defendant's relation to these consignments of meats was something more than that of a mere sales agent. He was bound to pay, and, it would seem, did pay, in advance, 80 per cent. of the value of each shipment, and he thus virtually became a joint owner with the plaintiffs of each car load of meat which came into his custody.

Looking into this record it appears that several distinct classes of items enter into the balance reported by the master: First, unintentional errors in figures in the sales accounts; second, short accounting in weights and prices; third, profits ultimately realized by the defendant on meats "taken to account," i. e. taken by the defendant himself at estimated prices. These items, blended together, aggregate $8,757.-36; but the amount of each class is not stated in the master's report, nor has it been shown to me. The first class, it will be noted, consists of mere mistakes in figures. The second class the master thought were intentional omissions, and he so found; but this finding the court did not approve. I was not satisfied, and am not yet convinced, that the finding is right. The defendant justified his "taking meats to account" under an alleged custom of trade and on other grounds. Upon the proofs the master rightly decided this matter against the defendant. The defendant was mistaken in supposing that he had a right to sell to himself, even at current market prices; but I am not persuaded that herein he acted in any bad faith. One other item, namely, $1,864.14, proceeds of the last two car loads of meat reported in the sales accounts, but not paid, enters into the balance found by the master. I find nothing to justify the issuing of an attachment. Plainly, the decree is for the payment of money due upon contract. In principle the case is not distinguishable from Pierce's Appeal, supra. The decision in that case, I think, is conclusive against the allowance of an attachment here.

It is conceded that, if an attachment is not allowable to enforce the payment of the main decree, none can issue to enforce payment of the master's fee. This, indeed, was expressly ruled in Pierce's Case. The rules for attachment are discharged.